78 F.3d 596
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lucia VIVAS-CHAVEZ; Sergio Jose Urbina-Vivas, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70716.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 27, 1996.*
Decided March 4, 1996.
 
 Before: PREGERSON, CANBY, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Lucia Vivas-Chavez, a native and citizen of Nicaragua, petitions for review of the decision of the Board of Immigration Appeals ("BIA") affirming the decision of the immigration judge denying her application for asylum and withholding of deportation pursuant to 8 U.S.C. §§ 1158(a) and 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny the petition.
 
 
 3
 Asylum applicants must establish a genuine subjective fear of persecution and an objectively reasonable fear. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). The burden is on the alien to meet this standard. See 8 C.F.R. § 208.13.
 
 
 4
 Vivas-Chavez testified that from 1967 to 1978 she belonged to the Somoza Woman's Liberal Party which supported the Somoza government that was eventually succeeded by the Sandinstas in 1979. In 1984, Vivas-Chavez began to experience problems with the Sandinista government after she hid her son so that he would not be conscripted into the army. As a result of hiding her son and because of her opposition to the Sandinista government, the Sandinistas threatened to send her to jail, stoned her house on five occasions, and denied her the opportunity to purchase certain food items and sewing materials which she needed for her dress making business. Vivas-Chavez was thereafter forced to travel out of town to purchase her sewing materials. Vivas-Chavez was also sent four anonymous letters telling her that she should leave her house because the Sandinistas wanted to use it for meetings and that if she refused to comply they were "going to see [her] against the wall."
 
 
 5
 In 1984, Vivas-Chavez had trouble obtaining a passport so that she could leave Nicaragua, but was able to secure one with the aid of an attorney. Finally, Vivas-Chavez testified that a number of years after she left Nicaragua, her oldest daughter was detained for three days by the police because of her role in assisting her brothers in leaving Nicaragua. Vivas-Chavez also testified that she fears returning to Nicaragua because "although the government has changed, the same turbas, (mobs), and the same Sandinista Defense Committee are ... still there."
 
 
 6
 Substantial evidence supported the BIA's finding that Vivas-Chavez did not establish a well-founded fear of persecution. First, sovereign nations have a right to require military service and to punish individuals for avoidance of military service. See Castillo v. INS, 951 F.2d 1117, 1122 (9th Cir.1991). Second, Vivas-Chavez was never arrested or detained under Sandinista rule, and she was able to leave the country without undue difficulty. See Saballo-Cortez v. INS, 761 F.2d 1259, 1265 (9th Cir.1985). Moreover, the restriction on her ability to buy certain food items and materials for her business were not so harmful as to constitute persecution, especially given the fact that Vivas-Chavez did not claim that her family suffered any substantial harm as a result. See id. (finding that denial of food ration card and work permission by the Sandinistas was not persecution). Finally, Vivas-Chavez's assertion that the Sandinistas still control Nicaragua is insufficient to show that she would be subject to a "particularized threat of persecution" apart from the general population. See Kotasz v. INS, 31 F.3d 847, 851-52 (9th Cir.1994).[1]
 
 
 7
 Because Vivas-Chavez failed to demonstrate a well-founded fear of persecution she also failed to satisfy the higher standard of "clear probability of persecution" required for withholding of deportation. See Acewicz, 984 F.2d at 1062.
 
 
 8
 Vivas-Chavez's son, Sergio Jose Urbina-Vivas was included in his mother's application pursuant to Section 208(c) of the INA. Therefore, his claims for asylum and withholding of deportation are derivative of his mother's and are denied. See 8 U.S.C. § 1158(c).
 
 
 9
 PETITION DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Vivas-Chavez's case is not comparable to other cases involving "atrocious forms of persecution" in which this court has found past persecution and upheld the grant of asylum on humanitarian grounds. See Acewicz, 984 F.2d at 1061